THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WALTER SUNVISON,

    Plaintiff,

v.

RENTOKIL NORTH AMERICA, INC.,

    Defendant.

No. 3:16-cv-2151-PK

**FINDINGS AND RECOMMENDATION**

**PAPAK, Magistrate Judge:**

Plaintiff Walter Sunvison brings this employment discrimination action against defendant Rentokil North America[1], an extermination business, alleging Defendant terminated him because of his age and back injury. Plaintiff asserts claims for discrimination under Oregon law. *See* Or. Rev. Stat. § 659A.112 (disability), Or. Rev. Stat. § 659A.030 (age).

Defendant now moves to compel arbitration based on an agreement Plaintiff signed when Defendant acquired Plaintiff's former employer. Plaintiff opposes the motion, contending the

---

[1] Defendant was known as J.C. Ehrlich Co. when it purchased Plaintiff's former employer in 2014. Defendant changed its name to Rentokil in 2015. Fisher Decl. 5, ECF No. 10.

Page -1- FINDINGS AND RECOMMENDATION

arbitration agreement should not be enforced because it is procedurally unconscionable.

I recommend granting Defendant's motion to compel arbitration. Because the issues raised here are arbitrable, this court has discretion to dismiss without prejudice, or to stay the action pending arbitration. *See Olson v. MBO Partners, Inc.*, No. 3:15-cv-2216-HZ, 2016 WL 6138249, at *2 (D. Or. Oct. 20, 2016). I recommend staying this action pending arbitration.

## BACKGROUND

Plaintiff states that he began working at Alpha Pest Control in 1989 as a pest control technician. Defendant purchased Alpha Pest Control in 2014.

Defendant disputes the factual allegations made by Plaintiff and two other employees in declarations describing the meeting where Plaintiff signed the arbitration agreement.[2] ECF Nos. 13, 14, and 15. For purposes of this motion, however, I take the allegations in these declarations as true.

On May 1, 2014, Defendant required all current employees of Alpha Pest Control to attend an afternoon meeting to learn about Defendant, their new employer. Plaintiff states, "At some point towards the very end of the meeting, we were handed a stack of papers to sign, including an employment agreement between [Defendant] and myself." Sunvison Decl. ¶ 6. Plaintiff "recall[s]" that he and the other employees "were given about five (5) minutes to review and sign well over 20 pages of documents." Sunvison Decl. ¶ 7. Plaintiff states that an unnamed representative for Defendant told the employees that they "did not really need to review the documents as all they contained were what was discussed in the meeting we had just finished." Sunvison Decl. ¶ 8. Plaintiff states that Defendant's representative told the employees that if

---

[2]Defendant moves to strike these declarations. I will address the motion to strike below.

Page -2- FINDINGS AND RECOMMENDATION

they did not sign the documents, they would be terminated immediately. Plaintiff states that employees were "not allowed to ask questions about what was in the documents." Sunvison Decl. ¶ 10. Plaintiff states that the word "arbitration" was not mentioned during the meeting. Plaintiff states that he did not have time to read through the documents when he signed them, and that he has no knowledge of an arbitration agreement and did not see, read, or understand that he was giving up legal rights.

Plaintiff recalls that, based on the wording of the signature page, he "did not believe [the Agreement] was a contract." Sunvison Decl. ¶ 14. The Agreement's final provision on employment at will, quoted below, states that the provision does not create an employment contract. Plaintiff states that he was told he would be given a copy of the documents he signed, but was not given a copy or told where to "access those documents." Sunvison Decl. ¶ 15.

Plaintiff submits declarations from two other employees who also allegedly attended the May 2014 meeting. David Bristow, who is now retired, states that Defendant's representatives told employees that Defendant would continue to operate the business the same way as the former owner. Bristow Decl. ¶ 6, ECF No. 14. Plaintiff also submits the declaration of Justin Walton, a current employee. Walton Decl., ECF No. 15. The declarations of Bristow and Walton are consistent with Plaintiff's.

At the meeting, Plaintiff signed the six-page Agreement. The Agreement was later signed by Defendant's director of human resources Vicki Fisher. Fisher Decl., Ex. 1, ECF No. 10-1. Section 5 of the Agreement, entitled "Arbitration and Class Action Waiver," is more than a page long. The first paragraph of the arbitration provision states:

Any dispute or controversy between the EMPLOYER and EMPLOYEE relating

to this Agreement or relating to or arising out of employment with the
EMPLOYER, or any termination thereof, shall be settled by binding arbitration
before a single arbitrator pursuant to the National Rules of the Resolution of
Employment Disputes then in effect by the American Arbitration Association.
Such arbitration will take place at the office of the American Arbitration
Association closest to the EMPLOYEE's assigned Company office, unless the
parties mutually agree to a different location.

Agreement § 5, at 3.

The final paragraph of the arbitration provision provides:

THE PARTIES HAVE READ AND UNDERSTAND THIS SECTION, WHICH
DISCUSSES ARBITRATION. THE PARTIES UNDERSTAND THAT BY
SIGNING THIS AGREEMENT, EACH PARTY AGREES TO SUBMIT ANY
CLAIMS ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH
THIS AGREEMENT, OR THE INTERPRETATION, VALIDITY,
CONSTRUCTION, PERFORMANCE, BREACH OR TERMINATION
THEREOF TO BINDING ARBITRATION, AND THAT THIS ARBITRATION
CLAUSE CONSTITUTES A WAIVER OF SUCH PARTY'S RIGHT TO A
JURY TRIAL AND RELATES TO THE RESOLUTION OF ALL DISPUTES
RELATING TO ALL ASPECTS OF THE EMPLOYER/EMPLOYEE
RELATIONSHIP, INCLUDING BUT NOT LIMITED TO, DISCRIMINATION
CLAIMS.

Agreement § 5, at 4.

The Agreement also includes the following provision above the signature block, labeled

"Employment At-Will":

**This Agreement does not constitute an express or implied employment
contract. EMPLOYER shall have the right unilaterally to change or revise
the terms on which it employs EMPLOYEE, or to terminate EMPLOYEE's
employment, with or without notice and with or without cause.**

Agreement § 13, at 6 (original bolding).

## LEGAL STANDARDS FOR MOTIONS TO COMPEL ARBITRATION

The Federal Arbitration Act (FAA) provides that arbitration agreements generally "shall

be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"[A]rbitration is a matter of contract," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), and district "courts [should] place arbitration agreements on equal footing with other contracts," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002). Therefore, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

When a party moves to compel arbitration, the burden of proof is on the party contesting arbitration. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). The court should resolve any doubts about arbitrability in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *West v. Brookdale Senior Living Communities Inc.*, No. 3:13–cv–1567–HU, 2014 WL 2829751, at *4 (D. Or. June 20, 2014).

## DISCUSSION

### I. Validity of Contract to Arbitrate

Plaintiff contends that the Agreement is not binding. Plaintiff relies on the Agreement's employment at-will provision:

> **This Agreement does not constitute an express or implied employment contract. EMPLOYER shall have the right unilaterally to change or revise the terms on which it employs EMPLOYEE, or to terminate EMPLOYEE's employment, with or without notice and with or without cause.**

Page -5- FINDINGS AND RECOMMENDATION

Agreement § 13, at 6 (original bolding). Plaintiff argues that this provision renders the entire Agreement, including the arbitration provision, unenforceable. Defendant responds, "Nowhere does the Agreement say it is not a *contract to arbitrate*; it simply indicates that it is not an *employment contract*." Def. Reply 9.

Plaintiff cites *Noorzai v. DaBella Exteriors, LLC*, No. 3:15-cv-0045-PK, 2015 WL 5037669 (D. Or. Aug. 25, 2015), but that case is distinguishable because the Employee Handbook at issue there provided, "This Handbook is not an employment contract and *is not intended to create contractual obligations of any kind.*" *Id.* at *4 (emphasis added). In *Noorzai*, I concluded that this "unambiguous disclaimer of contractual obligations is sufficient to make an employee handbook nonbinding," so the Handbook did "not constitute a contract binding the parties to the arbitration policy found in Section 8.4." *Id.* I also concluded, however, that the acknowledgment form signed by the plaintiff, which incorporated the arbitration policy, was binding despite the disclaimer because it was a separate agreement from the Handbook. *Id.* at *5.

Plaintiff cites *Kummetz v. v. Tech Mold, Inc.*, 152 F.3d 1153 (9th Cir. 1998), but *Kummetz* is also distinguishable. There, the employer gave the plaintiff-employee an Employment Information Booklet and an Information Booklet Acknowledgment. *Id.* at 1154. The plaintiff signed the Information Booklet Acknowledgment, which provided:

> I understand and agree that I am covered by and must abide by the contents of this Booklet. I also understand and agree that this Booklet in no way constitutes an employment contract and that I remain an at-will employee.

*Id.* The separate Employment Information Booklet contained a waiver of the right to a jury trial. The Ninth Circuit held that the jury waiver was not enforceable because the Acknowledgment "did not notify Kummetz that the Booklet contained an arbitration provision, nor did it mention

Page -6- FINDINGS AND RECOMMENDATION

or imply anything about employment-related disputes, civil rights statutes, or waivers of remedies." *Id.* at 1155.

Here, as Plaintiff states, "the Employment Agreement is encompassed in a single document, " Pl. Resp. 6, and the Agreement's arbitration clause describes the rights the employee is waiving. *See Ashbey v. Archstone Prop. Mgmt.., Inc.*, 785 F.3d 1320, 1325 (9th Cir. 2015) (distinguishing *Kummetz* when the plaintiff-employee signed an acknowledgment form that "explicitly notified [the plaintiff] the Manual contained a Dispute Resolution Policy") . I conclude that Defendant has shown the Agreement is enforceable, subject to Plaintiff's claims of procedural unconscionability.

## II. Unconscionability

Plaintiff contends that the arbitration clause of the Agreement is not enforceable because it is procedurally unconscionable. State law governs the issue of unconscionability. *Chalk v. T–Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir.2009). "Whether a contract is unconscionable is a 'question of law that must be determined based on the facts in existence at the time the contract was made.'" *Bettencourt v. Brookdale Senior Living Communities, Inc.*, No. 09-cv-1200-BR, 2010 WL 274331, at *9 (D. Or. Jan. 4, 2010) (quoting *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614, 156 P.3d 156, 159 (2007)).

"In Oregon, the test for unconscionability has two components—procedural and substantive." *Motsinger*, 211 Or. App. at 614, 156 P.3d at 160 (citing *Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 566, 152 P.3d 940, 948 (2007)). "Procedural unconscionability refers to the *conditions* of contract formation, and substantive unconscionability refers to the *terms* of the contract." *Id.* (internal citation omitted).

Page -7- FINDINGS AND RECOMMENDATION

## A. Plaintiff's Failure to Show Substantive Unconscionability

Defendant contends that Plaintiff's failure to assert substantive unconscionability is fatal to his arguments against enforcing the arbitration provision of the Agreement. The Ninth Circuit, interpreting Oregon law, stated, "Although both forms of unconscionability 'are relevant, . . . only substantive unconscionability is absolutely necessary.'" *Chalk*, 560 F.3d at 1093 (quoting *Vasquez-Lopez*, 210 Or. App. at 567, 152 P.3d at 948) (internal quotation marks omitted). Addressing this issue in *Noorzai*, I concluded, "Unlike some other jurisdictions, Oregon law does not require both procedural and substantive unconscionability; however, '[t]he substantive fairness of the challenged terms is always an essential issue.'" 2015 WL 5037669 at *7 (quoting *Vasquez-Lopez*, 210 Or. App. at 567, 152 P.3d at 948 (further citation omitted)).

Plaintiff has not cited any decision interpreting Oregon law which holds that procedural unconscionability alone, without substantive unconscionability, would justify denying a motion to compel arbitration. *See Hatkoff v. Portland Adventist Med. Ctr.*, 252 Or. App. 210, 218, 287 P.3d 1113, 1118 (2012) ("Our case law has not clarified the proper result when a court determines that the challenged provision is procedurally unconscionable but substantively fair."). The Oregon Court of Appeals has upheld an arbitration agreement that was "not entirely free from procedural unfairness" but was substantively fair. *Sprague v. Quality Restaurants Northwest, Inc.*, 213 Or. App. 521, 526, 162 P.3d 331, 334 (2007). For this motion, I will assume that under Oregon law, procedural unconscionability, if egregious enough, could render an arbitration clause unenforceable even when there is no substantive unconscionability.

## B. Procedural Unconscionability

"Generally speaking, procedural unconscionability refers to the conditions of contract

Page -8- FINDINGS AND RECOMMENDATION

formation and focuses primarily on oppression and surprise." *West v. Brookdale Senior Living Communities Inc.*, No. 3:13–cv–1567–HU, 2014 WL 2829751, at *7 (D. Or. June 20, 2014). Here, Plaintiff contends that Defendant used surprise, arguing (1) he was not allowed enough time to read and understand the Agreement; (2) he was not allowed to ask questions; (3) he was told to rely on the statements at the meeting on the contents of the Agreement; and (4) he was not given a copy of the signed Agreement or told where he could obtain one. Plaintiff also has an allegation relating to oppression, stating that he was told to sign the Agreement immediately under threat of termination.

### 1. Not Enough Time to Read Agreement

Plaintiff states that he was given about five minutes to read the Agreement. The Agreement is six pages long, and the arbitration provision starts on the third page. The Agreement is clearly written in a legible typeface.

Because Plaintiff signed the Agreement, under Oregon law he is "presumed to be familiar with its contents." *West*, 2014 WL 2829751, at *8 (citing *Motsinger*, 211 Or. App. at 616-17). This court has rejected a similar argument:

> Brown also argues she did not have the opportunity to read the Tiffin Arbitration Agreement and, therefore, could not have known about or agreed to those terms. This argument is equally unavailing. "Under usual circumstances, when one contracts with another, whether it be an insurance contract or otherwise, the contracting parties have an obligation to read the contract and if they assent without so doing, they cannot come into court later and successfully contend that their agreement was different than expressed in the writing." *Franklin v. W. Pac. Ins. Co.*, 243 Or. 448, 453–53 (1966). Additionally, by signing the Tiffin Form, Brown specifically acknowledged that she had read the Tiffin Warranty, including the Tiffin Arbitration Agreement, understood the provisions contained therein, and agreed to be bound by those terms. Brown may not now argue to the contrary.

*Brown v. BYRV, Inc.*, No. 3:14-cv-1213-AC, 2015 WL 4507159, at *8 (D. Or. July 24, 2015).

Other decisions are in accord with *Brown*, including *Noorzai*. Accepting Plaintiff's declarations as true[3], I conclude that he has not shown surprise based on the amount of time Defendant gave him to read the Agreement.

### 2. Not Allowed to Ask Questions

While disputing Plaintiff's allegation that he was not allowed to ask questions about the Agreement, Defendant argues that assuming the allegation is true, it does not show procedural unconscionability. I agree. Because Plaintiff does not assert that the arbitration clause is confusing or that he could not understand it, this allegation is not sufficient.

### 3. Told to Rely on Statements at Meeting on Content of Agreement

Defendant disputes Plaintiff's allegation that employees were told to rely on the statements of Defendant's representative at the meeting. Defendant argues that even if this allegation is true, Plaintiff has not shown how he was misled or surprised. Noting Plaintiff's allegation that the word "arbitration" was not mentioned during the meeting, Defendant argues that "no one could have misled [Plaintiff] about what that meant or what the arbitration clause required." Def. Reply 7. Accepting Plaintiff's allegation as true, I conclude that he fails to show procedural unconscionability.

### 4. Not Given Copy of Signed Agreement

I agree with Defendant that Plaintiff's allegation that he was not given a copy of the Agreement does not support his argument for procedural unconscionability. Procedural unconscionability looks to "the facts in existence at the time the contract was made." *Bettencourt*, 2010 WL 274331, at *9 (citation and quotation marks omitted). Plaintiff states that

---

[3]Defendant disputes Plaintiff's allegations about the employee meeting.

he was told he would be given a signed copy of the Agreement but was not given one, but he does not assert that he requested a copy and was not given one.

### 5. Told to Sign Under Threat of Termination

Plaintiff alleges that he was told he must sign the Agreement or be terminated. Such threats, while showing a contract of adhesion, do not necessarily invalidate an agreement. In *Sprague*, the Oregon Court of Appeals enforced the arbitration clause at issue even though the arbitration clause was

> part of a classic contract of adhesion, that is, an agreement between parties of unequal bargaining power, offered to the weaker party on a "take-it-or-leave-it" basis. Thus, the circumstances of contract formation were somewhat oppressive. However, under Oregon law, the fact that a contract is adhesive does not alone render it unenforceable. Further, there is no evidence of any other oppressive circumstances, nor was the agreement brought about by deception, as was the arbitration clause in *Vasquez–Lopez*, 210 Or. App. at 568, 152 P.3d 940. Rather, it is clearly and fully described in the employee handbook, with the key provisions set off in italics and boldface; the acknowledgment form as well sets off the agreement in italics. The language is not technical and the typeface is large. We therefore conclude that, procedurally, the agreement was no more unconscionable than the typical employment, consumer, or service contracts that are a common feature of contemporary commercial life and that Oregonians sign (and Oregon courts enforce) as a matter of course.

213 Or. App. at 526, 162 P.3d at 334 (citations omitted). The facts here are similar to those in *Sprague*. *See also Chalk*, 560 F.3d at 1094 ("the take-it-or-leave-it nature of [a contract] is insufficient to render it unenforceable" on the basis of procedural unconscionability when the arbitration clause "was not hidden or disguised and where the plaintiff was given time to read the documents before assenting to their terms") (citation omitted); *Willis v. Nationwide Debt Settlement Group*, 878 F. Supp. 2d 1208, 1214-15 (D. Or. 2012) (accord).

Taken individually, none of Plaintiff's allegations shows procedural unconscionability. Considering the alleged circumstances together, I conclude that they are not sufficient to justify

denying the motion to compel arbitration.[4]

### III. Motion to Strike

Defendant moves to strike the three declarations submitted by Plaintiff, contending that the declarations contain hearsay because they do not identify Defendant's representatives who attended the meeting. Defendant also contends that the declarations of Bristow and Walton are not relevant to Plaintiff's allegations.

I deny as moot Defendant's motion to strike. I conclude Defendant should prevail on its motion to compel arbitration even accepting the declarations submitted by Plaintiff as true.

### IV. Resolution

In its motion, Defendant seeks to compel arbitration and either dismiss this action or stay this action pending arbitration. "If the court determines the matter is subject to arbitration, it may either stay the matter pending arbitration or dismiss the matter." *Bettencourt*, 2010 WL 274331, at *2 (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)). Here, this court has discretion to dismiss without prejudice because "all the issues raised in the action are arbitrable." *Olson v. MBO Partners, Inc.*, No. 3:15-cv-2216-HZ, 2016 WL 6138249, at *3 (D. Or. Oct. 20, 2016) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). I recommend staying this action pending the resolution of the arbitration.

### CONCLUSION

For the reasons provided above, Defendant's Motion to Compel Arbitration, ECF No. 9, should be GRANTED and this action should be STAYED pending arbitration.

---

[4]Defendant argues that the decisions on procedural unconscionability do not authorize considering the totality of the circumstances. I need not resolve this issue here.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 21st day of April, 2017.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge